# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

June 21, 2010

Deshawn Wiggins
#27927-050
F.C.I. Schuylkill
P.O. Box 759
Minersville, PA 17954

   (*Pro Se Petitioner*)

Maureen Nakly
Nancy Hoppock
Office of the U.S. Attorney
970 Broad Street
Room 700
Newark, New Jersey 07102

   (*Attorneys for Respondent*)

   **RE:**   **Wiggins v. United States**
         **Civ. No. 10-1033 (WJM)**

Dear Litigants:

     This matter comes before the Court on *pro se* Petitioner Deshawn Wiggins motion for post-conviction relief pursuant to 28 U.S.C. § 2255. There was no oral argument. For the reasons stated below, the motion is **DISMISSED WITH PREJUDICE** and the relief requested therein is **DENIED**.

I.  **BACKGROUND**

On January 17, 2006, Newark, New Jersey Police Officers Josue Martinez and Magali Camacho approached Petitioner Deshawn Wiggins because he matched the description of a suspect in a recent robbery. (Trial Tr. 52, Oct. 31, 2006.) When the officers approached, Wiggins ran from them. (*Id.* at 55.) Both officers testified that while in pursuit, they saw Wiggins discard a large object, which turned out to be a .357 revolver. (Oct. 31 Tr. 36, 39; Trial. Tr. 8-10, Nov. 1, 2006.) On May 3, 2006, a federal grand jury indicted Wiggins on one count, charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

During Wiggins' second trial,[1] the Defense attempted to impeach the credibility of Officers Martinez and Camacho by pointing to discrepancies in the time-line they provided for recovery of the weapon. (*See* Trial Tr. 90, Nov. 2, 2006.) Several other officers[2] who were involved in Wiggins' arrest also testified at trial. (Nov. 1 Tr. 67; Nov. 2 Tr. 47.) Wiggins' principal defense was that the gun was not his. The Defense presented testimony of another individual who claimed the gun belonged to him and that he placed it in the open lot where it was found three months earlier. (*See* Nov. 2 Tr. 28.) However, the gun was not weatherbeaten, creating doubt that the gun was stored outside for three months. (*Id.* at 96.) Ultimately, the jury believed the Government's version of the facts and returned a guilty verdict on November 3, 2006.

This Court sentenced Wiggins to a 100-month term of imprisonment. After sentencing, Wiggins appealed his conviction to the Third Circuit. After that appeal was denied,[3] Wiggins filed a petition for writ of certiorari to the Supreme Court. On February 23, 2009, the Supreme Court denied the writ. *Wiggins v. United States*, 129 S. Ct. 1367 (2009). Presently before this Court are Wiggins' timely, six-count Section 2255 motion and the Government's response.

---

[1] Wiggins' first trial ended in a hung jury.

[2] In his 2255 Petition, Wiggins claims the Government withheld *Brady* information about Sergeant Venancio, one of the officers on scene who testified at trial.

[3] In that opinion, the Third Circuit found that Wiggins' sentence of 100 months was reasonable and that this Court gave meaningful consideration to the Section 3553(a) factors, including Wiggins' request for a variance based on the conditions of his pretrial detention at Passaic County Jail. *United States v. Wiggins*, 293 F.App'x 907, 909 (3d Cir. 2008).

## II.   DISCUSSION

28 U.S.C. § 2255 provides that a prisoner in custody serving a sentence imposed by a federal court may move for that court to vacate, set aside, or correct the sentence. Petitioner Wiggins' six-count 2255 Petition raises three principal arguments for habeas relief: (1) ineffective assistance of counsel; (2) Government failure to disclose *Brady* material; and, (3) that Wiggins was not indicted nor convicted by a jury of his peers.

### A.   Petitioner's Ineffective Assistance of Counsel Claims

Wiggins' 2255 Petition raises three ineffective assistance of counsel claims.  For Wiggins to prevail on any of these, he must demonstrate that (1) his counsel's performance was deficient and (2) that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008).  To succeed on the deficient performance prong, Wiggins must show that his attorney's representation "fell below an objective standard of reasonableness." *Strickland* at 688.  To prove the second prong of prejudice, Wiggins must demonstrate to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.' " *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007) (quoting *Strickland* at 694). Accordingly, Wiggins will not be entitled to relief unless he "affirmatively establishes the likelihood of an unreliable verdict." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir.1993).

Wiggins first argues that Counsel failed to properly argue for a downward departure based on the "deplorable conditions" of Passaic County Jail, where Wiggins spent his pretrial confinement. (2255 Pet. 4-11.)  However, Wiggins' counsel requested a downward variance in the sentencing brief, argued for the same at sentencing, and advanced the argument on appeal. (*See* Sentencing Br. at 4-7; Sentencing Tr. 11-13, July 11, 2007; Appellant's Third Circuit Br. at 30-40.)  On the record before this Court, it is clear that counsel competently argued for a downward departure and was far from deficient under the first *Strickland* prong.  Moreover, Wiggins' 100-month sentence was reasonable although he did not receive the requested downward variance. *United States v. Wiggins*, 298 F.App'x 907, 909 (3d Cir. 2008).  In short, Counsel's performance did not undermine confidence in Wiggins' sentence, as required by the second *Strickland* prong.

Wiggins' also alleges that Counsel forced him to reject a 60-month plea offer before the case was tried a second time. (2255 Pet., 11-12.)  However, he has not provided any evidentiary support for this claim.  Wiggins' bare allegations of ineffective

advice are insufficient for him to prevail on this ground. *See, e.g., Powell v. Meyers*, 214 F.App'x 197, 200 (3d Cir. 2007); *Parry v. Rosemeyer*, 64 F.3d 100, 118 (3d Cir. 1995). Moreover, in his 2255 Petition, Wiggins acknowledges that prior to the second trial, he specifically and unequivocally informed the Court that he wanted to proceed to trial and no one forced him to.[4] (2255 Pet., 12.) This colloquy with the Court further illustrates that Wiggins was not forced to reject the plea offer, and forecloses any contrary argument on collateral review. *See, e.g., Rice v. Wynder*, 346 F.App'x 890 (3d Cir. 2009); *United States v. Lilly*, 536 F.3d 190, 197 (3d Cir. 2008).

Finally, Wiggins argues that counsel was deficient for failing to object to the systematic exclusion of African-Americans from both his trial and grand jury venires. (2255 Pet. 25.) However, as discussed *infra*, there is no evidence that such a violation took place, and, accordingly, there was no valid objection for counsel to raise. In sum, Wiggins has not set forth any valid ineffective assistance of counsel claims and habeas relief on these grounds will be denied.

      B.     Petitioner's *Brady* Violation Claim

Wiggins also claims the Government committed a *Brady*[5] violation when it suppressed evidence about Newark Police Officer Anthony Venancio, the Government's "star rebuttal witness." (2255 Pet. 15.) Wiggins alleges the Government purposefully withheld evidence of Sergeant Venancio falsifying evidence, committing acts of police brutality, orchestrating arrests, and committing perjury in the course of other criminal investigations.[6] *Id.* Wiggins argues that had the Defense had access to this information, it would have been used to impeach Venancio. (*Id.* at 20.) At the outset, it should be noted that a "criminal defendant does not have a right to full discovery of the government's case." *United States v. Casseus*, 282 F.3d 253, 257 (3d Cir. 2002). With that in mind, the Government sought an *ex parte* ruling on whether it was required to disclose confidential information in Venancio's personnel file. As this Court reviewed Sergeant Venancio's record, and determined it was improper impeachment material, no

---

[4] Although the Government was unable to locate the corresponding transcript for this statement, it also recalls Wiggins saying this . (Resp. to Pet.'s 2255 Mot. 19 n. 3.)

[5] *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation occurs when the government fails to disclose materially favorable evidence to the accused. *Youngblood v. West Virginia*, 547 U.S. 867, 868 (2006).

[6] While conceding that Sergeant Venancio's police record does contain specific allegations and dispositions, the Government characterizes Wiggins' summary as inaccurate. (Resp. to Pet.'s 2255 Mot. 28 n. 7.)

*Brady* violation occurred. *See United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998). Moreover, the Government gave the Defense notice of its *ex parte* motion. (*See* Oct. 31 Tr. at 10.) This disclosure further precludes Wiggins' claim that a *Brady* violation occurred. *See United States v. Pelullo*, 399 F.3d 197, 215 (2005).

Even assuming, *arguendo*, that all of Wiggins allegations about Venancio are true and that the Defense would have been successful in impeaching Venancio if given access to this information, Wiggins would still not prevail on his *Brady* claim because Venancio's testimony was not material to Wiggins' conviction. Evidence is only material "if there is a reasonable probability that, had it been disclosed, the result of the proceedings would have been different." *United States v. Perez*, 280 F.3d 318, 348 (3d Cir. 2002). Wiggins overstates Venancio's role in the trial as the government's star witness. The key issue in the case was whether Wiggins was in possession of the gun. Officers Martinez and Camacho, the two primary officers on the scene, testified to seeing Wiggins discard the gun. Their testimony was far more probative than Venancio's, the field supervisor who directed other officers as they canvassed the scene after Wiggins was in custody. (Nov. 2 Tr. 51.) In short, Government disclosure of Venancio's personnel file would not have put the case in such a different light as to undermine confidence in the verdict, and Wiggins' *Brady* claim will also fail.

    C.    Petitioner's Unrepresentative Jury Claims

Finally, Wiggins alleges exclusion of African Americans from his petit and grand jury venires, in violation of the Sixth Amendment's fair cross-section requirement. (2255 Pet. 23-25.) In support of this claim, Wiggins states that of the 103 members in the petit jury venire, only two were African American, and that the jury which convicted him had no African Americans.[7] *Id.* Wiggins further notes that Newark is 60% African American, and from there, the only conclusion that can be reached is that African Americans are systematically excluded from jury service in the District Court.[8] In order to establish a *prima facie* fair cross-section violation, Wiggins must show that underrepresentation of African Americans on his jury was due to the systematic exclusion of that group in this Court's jury selection process. *Berguihs v. Smith*, 130 S.Ct. 1382, 1387 (2010) (citing *Duren v. Mississippi*, 439 U.S. 357 (1979)). To do this, Wiggins

---

[7] There is no evidence in the record which supports, or refutes this claim. (*See* Voir Dire Tr., Oct. 31, 2006.)

[8] It should be noted that the Newark Vicinage of the New Jersey District Court draws its jury pool from the voter registration lists from eight counties in New Jersey, not just the City of Newark. *See* Plan Implementation of the United States District Court for the District of New Jersey Pursuant to the Jury Selection and Service Act of 1968 (*Revised* March 20, 2009).

must present competent statistical evidence based on an examination of jury selection practices in a district over a prolonged period of time.  *United States v. Weaver*, 267 F.3d 231, 240 (3d Cir. 2001).  Even assuming Wiggins is correct about the racial composition of his petit jury venire and trial jury, Wiggins has still not presented evidence demonstrating systematic exclusion of African Americans as jurors from this Court's jury selection process, and accordingly, has failed to establish a *prima facie* fair cross-section violation.  Moreover, the District of New Jersey's practice of selecting jurors using voter registration records has been repeatedly affirmed in the Third Circuit as being in compliance with the Sixth Amendment.  *See, e.g.*, *United States v. Smith*, 247 F.App'x 321, 323 n. 2 (3d Cir. 2007).  Accordingly, Wiggins is not entitled to habeas relief on the ground that the juries which indicted and convicted him did not represent a fair cross-section of the community.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the motion and files and records of the case show conclusively that Petitioner is not entitled to relief.  Accordingly, the Government's motion to dismiss is **GRANTED** and Wiggins' petition is **DISMISSED WITH PREJUDICE**.  An Order follows.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**